## WILCOX *et al. v.* MOORE.

On the trial of an action of ejectment, where the plaintiff shows possession of the land in dispute under a recorded deed prior to any entry upon the land by the defendant, and the defendant introduces no evidence whatever in support of his plea, it is not error to direct a verdict for the plaintiff.

Submitted June 11, — Decided August 11, 1903.

Ejectment. Before Judge Roberts. Irwin superior court. November 12, 1902.

*E. H. Williams* and *Eldridge Cutts*, for plaintiffs in error.
*E. D. Graham*, contra.

CANDLER, J. The plaintiff below sued the defendant in ejectment, to recover two lots of land in Irwin county, known as lots No. 65 and No. 66. Subsequently the plaintiff dismissed his suit as to lot No. 65. The defendants introduced no evidence at the trial. The judge directed a verdict in favor of the plaintiff for lot No. 66. The defendants moved for a new trial on the general grounds that the verdict was contrary to law and the evidence. Their motion was overruled, and they excepted. As will have been seen, the sole question for determination is whether the plaintiff made out a prima facie case for recovery in an action of ejectment. He introduced in evidence a deed from the sheriff of Irwin county to himself, conveying the lot in dispute, dated December 3, 1878, and recorded in January, 1899. The suit was brought in January, 1902. The plaintiff testified, that, within a few month's after the execution of the sheriff's deed to him, he went into possession of lot No. 66, and cultivated a small portion of it, lying on the line between lots 66 and 65. "The field on these lots was cultivated every year in corn and peas till J. R. Allison boxed the trees on the two lots of land for turpentine purposes and commenced working said trees for turpentine purposes. . . I leased the timber on these two lots of land to J. R. Allison for turpentine purposes about fifteen or seventeen years ago. The two lots of land were well timbered with pine timber. The pine trees were growing over all of said lots. There were pine trees on every part of it except that part I had in cultivation. J. R. Allison entered on the lands under the lease I made to him and worked the pine timber for turpentine purposes. He cut boxes in the pine trees, then cornered them, clipped the pines once a week, and dipped the boxes about every three weeks. In the winter he had each pine tree raked around to prevent the boxes from being burned by fire. He worked the trees on these two lots of land in this way three or four years. About the time he quit working the timber on these two lots of land I put Morgan Smith in the possession of both of these two lots of land as my tenant. Smith started to build a house, but

never completed it. He lived there about a year, and died. His family remained there for some time afterwards, and until the time I leased the lot of land to Tom Tomberlin," one of the defendants. The lease to Tomberlin was introduced in evidence, and was as follows: "State of Georgia, Irwin county. Know all men by these presents, that I, E. H. Moore, have this day leased to Thomas Tomberlin a certain lot of land, No. (66) sixty-six, for the purpose of living and farming upon, for the space of eight years (8), and said T. Tomberlin to take in eight acres of land on said lot and cultivate the same for the use of it, and also to build upon said lot houses, etc." This instrument was signed by Tomberlin, and was dated February 12, 1894. The plaintiff testified that Tomberlin had occupied the land as his tenant ever since he had put him in possession, until a short time prior to the filing of the suit, when he began to claim it as the tenant of Wilcox, his codefendant. He also testified that the defendants had entered upon the land and cut timber.

We are constrained to hold that, in the absence of a contrary showing, this evidence was sufficient to authorize the trial judge to direct a verdict for the plaintiff for the lot in controversy. The only question that can be made is whether or not the plaintiff was shown to have been in actual possession of the entire lot, prior to the entry of the defendants ; for if such be the case, he was entitled to recover under the Civil Code, § 5008, which provides that "A plaintiff in ejectment may recover the premises in dispute upon his prior possession alone, against one who subsequently acquires possession of the land by mere entry, and without any lawful right whatever." It appears that for many years the land in dispute has been in the notorious possession of the plaintiff or some one claiming under him. It may be conceded that it was not shown that any of the plaintiff's tenants were in possession of the entire tract sued for, or of what portion of such tract they were in possession. It is to be borne in mind that the plaintiff's paper title was recorded in June, 1899,— before it was shown that Wilcox entered on the land, and before Tomberlin began to claim as the tenant of Wilcox. From the time that the deed was admitted to record, Tomberlin's possession of a portion of the tract as the tenant of the plaintiff was constructively possession of the whole. *Johnson* v. *Simerly*, 90 *Ga.* 613, and cases cited. It thus appears that Moore

was in actual possession of lot No. 66, through his tenant, Tomberlin, prior to any assertion of title by the defendants. No muniments or other evidences of title were introduced by the defendants. Their plea, it is true, avers that they "in good faith purchased the premises sued for, and entered into possession of the same." This plea, however, was entirely unsupported by evidence, and so far as appears from the record they were trespassers pure and simple. In this view of the case, and in light of the code section which has been quoted, it is manifest that the court did not err in directing a verdict for the plaintiff, as any other finding would have been illegal as contrary to the evidence.

_Judgment affirmed. By five Justices._